Good morning, your honors. May it please the court, Robert DeFrancesco on behalf of the AEFTC, petitioners in this case. We believe that the lower court's decision, the CIT's decision in this case, did not grant commerce the proper deference in interpreting the scope in this case, did improperly apply the existing precedent, and disregarded important factual findings that commerce had made in the original determination. Well, at a minimum, doesn't this have to go back, even if I don't agree with you on all of that, because didn't the judge below pre-decide a factual issue before he sent it back to you? I mean, makes it clear that we don't think we even have the authority to consider this factual issue. I mean, that, to me, it seems like would be a very narrow ground upon which to vacate and remand, certainly probably not, you know, the full scope of what you would like to get, but at a minimum, I think that seems to be a problem. Yes, your honor. You're referring to the Fassner determination? Yes. And I was here last year in front of the court in the Meridian appliance handle decision, which also made the similar finding. Again, in that case, it's virtually the same product. It's an extruded appliance handle where a plastic end cap was at issue, and whether it was a Fassner, and the same issue applied in that case, your honor. And you're right. So yes, it is a factual finding that could be remanded on that basis. We would... Is there any difference between this and the Meridian case? I mean, why are we here, even, if there is, in fact, no difference, and you will be controlled by the Meridian outcome? Well, your honor, in this case, the lower court went a little bit further than it went in Meridian, and decided that because this appliance handle with the end cap was an assembly, the lower court decided that under the general terms of the scope, that all assemblies would be out, that assemblies are not covered by the scope. And that goes a little bit further than the court had gone in Meridian. And frankly, that narrows the scope to the point where now we start excluding a lot of things that would be covered. In fact, this court in the curtain wall unit, the Uwanda curtain wall unit decision, found that curtain wall units were assemblies and were subject merchandise. But under the lower court's decision in this case, any assembly would be out. You're basically saying he read sub-assemblies out. He read sub-assemblies out, he read assemblies out, he read the decision in a way that even facially covered assemblies that are identified in the scope, like a window frame or a door frame, that's an assembled product of at least four extrusions to create that frame, along with fasteners, even those would be out. Does Whirlpool have another case pending in front of us now on similar issues? Not that I'm aware of, but you'd have to ask their counsel. But if I may, Your Honors, so the initial remand, or rather the initial scope ruling made by Commerce, that's before us here today, isn't it? Correct. The initial scope ruling. So if we just affirm that, then we don't have to remand? Correct, Your Honor. And I would suggest, again, we would suggest that this court could affirm Commerce's original determination and vacate the lower court's decision and reinstate that decision. But if I may, so here, going to the fastener issue, the lower court reached its assembly determination exclusively by, or it had to reach its decision, whether it's first determining that the end cap here was not a fastener. And we believe that was improper for a number of reasons. Did Commerce decide whether the end cap was a fastener? It did. In its decision at page 17, Commerce states that we find that the end caps described are involved in attaching the handle to the refrigerator door in a manner that allows the handle to fit tightly to the refrigerator door and release friction between the door and the handle. On this basis, we find that the plastic end caps are analogous to a washer, a fastener. Well, a washer is not a fastener. I mean, if I hand you a washer, it's not going to hold anything together. Your Honor, it's... By itself, a washer does nothing. So it's part of a fastener without... You don't even need a washer to fasten anything. That's bull. You can put a screw in without a washer and it holds it together. You can't put a washer in and do anything with it. It holds nothing together. Washers assist the fastening, the screw with the fastener, and, Your Honor... How? How does the washer assist? In what way does it make the fastening better? As Commerce described, it assists in tightening that product to the other product that it's being joined to. And frankly, in this... Are you saying in the absence of a washer, the two things wouldn't be fastened together? I don't know that it would remain fastened together for a long period of time. So in this counsel, Your Honor, in the lower court admitted, and as Commerce was looking at the schematics, it's simply not possible to attach this appliance handle to the door without that end cap. Without the end cap, it's not going to attach. But even if I might disagree, shouldn't your argument to me be this is a question of fact and Commerce gets deference on those facts and that the lower court didn't give that deference and that I have to give that deference because I've got a review under the same standard as them? So even if I was skeptical about whether this end cap amounted to a fastener, isn't that what your argument to me really should be? That's correct. And Your Honor, just to point out, in geodesic domes, which is a similar scope determination, previous scope determination, Commerce looked at the other fasteners that were in those domes and it was screws, nuts, bolts, and washers. It was part of that kit that was in the assembly. But yes, you're right, Your Honor. The amount of deference that should be given on a factual determination here as to whether it is a fastener should have been granted to me. So even if I think he was right and that this isn't a fastener, that's not the question? Correct. Okay. Anything else? As you can tell, we have your argument pretty well in hand. Thank you, Your Honor. I do not have any other questions. Let's look at the description of the three different types of handles, the Type A, Type B, and Type C. Those are provided by Meridian, is that correct? In the Meridian case, yes. Whirlpool didn't describe these handles as the Type A, Type B. They had two. One was with end caps and one without. And in that case, in the Meridian case, the Type B handles, the end caps were described as the end caps are used to fasten the handle to the door. Do they do anything different in this case? No. In this case, as Commerce, when it looked at the schematic, Commerce, evaluating the schematic, came to the conclusion that without that end cap, you could not fasten the handle to the door. And therefore, they function the same way and reach the same conclusion. So if there are no more questions, Your Honor, I'll reserve the balance of my time for rebuttal. May it please the Court, my name is Donald Harrison. I'm with the law firm of Gibson Denon Crutcher. I'm appearing here on behalf of Whirlpool. At the outset, I'd just like to make clear what was decided by the lower court by Judge Stanton in his decision, and then clarify how reasonable and correct that decision was, which the Commerce Department and the remand redetermination did not review, even though Judge Stanton gave them an opportunity to do so. The issue that he raised with respect to the general scope language, and I'd like, if I could, to just draw your attention to the general scope language that he reviewed. General scope language is included in the appendix. If you have the appendix, it's in the redetermination by the Commerce Department, their April 15, 2016 redetermination, and it's in the appendix beginning on page 23 and going for several pages thereafter. And you have pointed out in DeFurco and other cases that the cornerstone and the linchpin and the predicate for the analysis in a scope case is the language of the order, and that you have to look to see, did the language of the order reasonably describe the product at issue? Okay, let's look at, there are five paragraphs in this. The first paragraph in the scope of the order at the top of the page there indicates, the merchandise covered by the order is aluminum extrusions, which are shapes and forms produced by an extrusion process. So that tells us that the aluminum extrusions are the items that are included in the scope. It doesn't say anything about assembled items in that paragraph. Going down to the second paragraph, aluminum extrusions are produced and imported in a wide variety of shapes and forms. Again, it's describing shapes and forms, nothing more than that. Then we turn the page in their analysis in the scope language. Paragraph three, aluminum extrusions are produced and imported in a variety of finishes and types of fabrication. It describes different coatings. It describes some of the items that are used in the whirlpool, that are produced to produce whirlpool extrusions. They're brushed, buffed, polished, and anodized. And then getting down, it says aluminum extrusions may also be fabricated. What does it say about fabrication? Prepared for assembly. There's no language here about assembled. Prepared for assembled, and then they may be finished. So there's nothing here about assembly in this general scope language that describes what's covered by the product. Paragraph four, subject aluminum extrusions may be described at the time of importation as parts for final finished products. Again, they're parts. They can be things like curtain walls and door frames and so forth. Parts. It doesn't expand the scope beyond the extrusions that we're talking about. And again, it says such parts that otherwise meet the definition of aluminum extrusions. Again, it's making clear that this is not expanding the scope beyond those that's otherwise described in the language. Then we have the paragraph, or the sentence, that's been focused on. The scope includes the aluminum extrusion components that are attached by means of welding or fasteners to form sub-assemblies. What page are you on? I'm sorry, I'm on page 24. It starts on 23. I just gave the first two paragraphs are on 23. Paragraph three is on 24. You're right in the middle. I'm in the middle of that subject aluminum extrusions may be described at the time of importation as parts. In the next sentence, the third sentence, the scope includes the aluminum extrusion components that are attached. I'd like to point out two important points here. It describes what is included here by welding to form sub-assemblies, i.e., that means I'm describing what a sub-assembly is, a partially assembled merchandise, partially assembled merchandise. And then another point, the last sentence of that says the scope does not include the non-aluminum extrusion components of sub-assemblies. That means if I have a sub-assembly, even if it's a partially assembled product, the scope does not include whatever non-aluminum components are included in that sub-assembly. Okay, with that background, that's the general scope language. It means in order for something to be described by this scope, it has to fit in one of those five paragraphs. Now, what we've explained, Judge Stancy explained that the assemblies, the aluminum extruded handle assemblies here do not fit within that rubric. And what are those? Well, those are, as we've explained in the scope request as well as in the brief to this court, these include assemblies of nine components. There's obviously the extruded aluminum component that I've described, but in addition to that, there are two of these end caps that we've talked about. They're fastened in each case by two screws and there are two clips. Now, what about these extruded plastic components? They account for a very substantial proportion of the cost of producing one of these handle assemblies. Over 25 percent of the cost is accounted for by these. They're also specifically designed for each particular aluminum handle. When they're entered separately, they may be entered separately. When they're entered separately, they're entered not as fasteners, as bolts, or washers, or anything else. They're entered as the parts of the appliance with which they're used. So if they come in for a handle for a refrigerator, they're classified as refrigerator parts. So these by no means are the types of, we'll get to the fasteners point in a moment, but my point is this analysis that I'm describing, that counsel has described as the fasteners being essential to the discussion on the general scope language simply is not the case. I've gone through each of the five paragraphs that describe the general scope that would have to be met if this product is going to be included and none of those, even the sub-assemblies, it's partially assembled. These are completely and and the Commerce Department made a finding on that and no one has disputed that they're fully assembled. The other point is that even if they weren't, and of course they are, but even if they weren't fully assembled, they're partially assembled, you'd have to take out the value of the plastic components there because that's what the last sentence of that paragraph expressly says. It does not include, and indeed when we've entered these products, the customs has agreed that they exclude the cost of those components on the value that's included in the value of the entry for purposes of anti-dumping deposits. In any event, so that's the general scope language. Now let's get to the issue of the fasteners. Point one I want to make is that we argued that the products were not covered by the provision that has the fasteners. I know you've read the briefs, you know there's two, and if you look directly at your attention to the following page, where we've got on page 0025, this is where we have the two exclusions. So this says that even if the products are covered by the general scope language, there are two exclusions that could apply. The first one says the scope excludes finished merchandise containing aluminum extrusions as parts that are fully and permanently assembled and completed at the time of entry, such as finished windows with glass, doors with glass or vinyl, and so forth. So what we've explained is that the Whirlpool appliance handle assemblies meet each of those nine components, including the two plastic end caps as well as the extruded handle. They're fully and permanently assembled, and no one has denied that they're completely assembled and completed at the time of entry, ready for use. And they're comparable to finished windows with glass or doors with glass or vinyl. In each case, you have a part and it needs to be used with appliance, just as the window would go into the building. And at one point, the Commerce Department took the view that in order to meet the finished merchandise exclusion, you have to have everything. They made a decision that when there was an awning mechanism, that you have to have the awning along with that. But they changed their... So it's your view that the handles along with the end caps, they constitute a finished good once they're assembled? I will be just... I hate to be very precise about that. Finished merchandise. It's a little confusing because the first sentence said the scope excludes finished merchandise. The term finished goods is included in a quite separate exclusion for a finished goods kit. This is not finished goods kit. This is fully assembled. But I'd like... But I'd like... Thank you for raising that. I'd like to mention something about this issue about the application of the finished goods kit. I know that Council has made much of the fact that there's a fastest exception and exclusion. But let's look at that exception for a moment. Just... I just want to be clear on something. So before we get to the finished goods kit, we have finished merchandise. Is that what you're arguing? Yes. Our argument is completely... Your argument is that the handles with the end caps constitute a finished merchandise? That's right. Our position is the general scope language does not cover it for the reasons that I just summarized as Judge Stanton had. But even if the general language did cover this product, it's excluded expressly by the finished merchandise exclusion, which is express and has these requirements containing aluminum extrusions as parts. Yes, it does. Fully and permanently assembled and completed. Yes, it is. It's comparable to finished windows with glass or doors with glass or vinyl, which include aluminum extruded components plus non-aluminum extruded components. I don't understand. You say these are finished merchandise and you say they're fully assembled. So how is it that the washers, which connect the handle to the door, are in place at importation when there's no door to actually connect them to? Well, let me say these are... Let's look at that analysis that was done for a moment. I'm asking you a question. I want to look at an analysis. Okay. I'm sorry. Answer the question. How are the washers assembled to the handle at importation when the purpose of them is to join them to the door and there's no door at importation? How is that a fully assembled sub-assembly or finished good? What is fully assembled is the door handle. The Commerce Department is expressly taking the view that in a situation like this where you have to use it with something else, that you don't need that something else as imported. In other words, the finished merchandise here is the door handle. It's a fully finished product that is fully assembled. I'm confused. What's imported is the door handle and a number of other parts including the end caps. No. I'm sorry. The end caps are not imported? I'm sorry. The end caps are assembled onto this handle assembly. Before importation or after? Before importation. There's a handle assembly. Let me see if I can direct you to... The end caps are assembled to the handles before importation? Yes, that's right. Are there washers and screws? There are no washers here. There are no washers. The end caps, this is... Commerce said the end caps operated like washers. Commerce said that in the original determination, right? Commerce said that in their interpretation. I'd like to direct your attention to the... If you go... And I have more to say about the finished goods kit if I could, but if I can just answer your or respond to your issue. If you go to the appendix at page 340, this is the Commerce's original determination. While you're looking at that, I'll just point out this was not... Commerce expressly did not reconsider this issue as the judge said they could have, but they expressly did not in their redetermination. They said we're not... It's moot because we've already concluded it's not covered by the general scope language, so the issue of whether they're finished merchandise is moot. We're not going to look at that issue again. But this is the page if you've got it. This is where they... Their so-called analysis on this issue. And this is... In the paragraph that starts, based on the information provided by Whirlpool, we find that the plastic... The handles at issue are comprised entirely of extruded aluminum and fasteners, plastic end caps. Therefore, we find they do not meet the first test for determining whether a good is a finished good. Geodesic domes. That was a kit's had nothing to do with finished merchandise. And I'll get to a moment here. But basically, they say, okay, well... And you point out earlier that a fastener, even if the general definition is something that attaches something together, this end cap is at the end of the appliance handle assembly, and it is attached to the door by means of a bolt that's not included with the importation. So the assembly is not attached to a door at the time it's imported. It's imported as a complete handle assembly. In the example of the window frames, those window frames and the glass come in attached, right? I mean, it's completed. Right. Well, but it's a part of a building. In other words, you can't... So the handle assembly is fully complete, but it needs to be attached to something to be useful, of course. Is there a picture? I mean, it talks in the opinion about how you submitted pictures. I'd love to see a picture of what this thing looks like when it's included. If you go to... I confess this is not a picture that's as good as it should be. But if you go to appendix page 132... So it's hard for me to read these little things. Where are the plastic end caps? See that bowed section there? That's the extruded aluminum. The end caps are the portions that are bottom of that. At either end, you see the plastic end cap. And you can see these are not simple items. They're, as I say, they account for more than 25 percent of the total cost of making this assembly. And there they are at the end. And they're attached to this aluminum extruded component by means of the two screws. They're attached by means of two screws. Are they to the handle? No, they're attached to the aluminum extruder. And if you imagine this extruded aluminum section here, and if you turn it over, then you'd see that there were two screws in that extruded component. They're protruding through that through the clips. And that is used to attach these plastic end caps to the handle assembly. So it's complete at the time it's entered. And what the Commerce Department said is not that they're fasteners. They didn't look at, they didn't analyze, okay, what is a fastener? How do we decide what a fastener is? As you point out, dictionary definitions define a fastener as something that attaches something. Well, these don't attach something. They are attached to something. No, but they also attach something. I mean, the only point, you don't need the plastic pieces, but for the fact that they are going to operate to attach this handle to a door. Well, there are several functions. They're aesthetic. I've talked to the people at Whirlpool, and they sometimes say, we design a handle that we want for aesthetic purposes. We want to have a hand cap. Sometimes they bring them in without the end cap. There's no evidence of this in the record. Don't tell me stuff that's not in the record. The second thing is, well, what is in the record is that they're... Because I wouldn't think they're aesthetic. And so if we're going to go off record, then how about I start going off record, too? We don't want to do that. You don't win if I go off record. Well, in any event, what I want to say was that these are... They don't attach. One thing I can say is that perhaps they're something that is attached to, through a bolt. For example, one point that Judge Sansum made is, if you imagine a broom that might have some threads in it, and it has an aluminum extruded component at one end and at the other end, and it's screwed into it, it's used to attach. But you would never say that that's a fastener. But one point is that the Commerce Department... Did Judge Sansum find these are not fasteners? Yes. He concluded that they could not conceivably be called fasteners because he said, look at the analysis. They're analogous to a... A washer is defined as a flat, thin ring or a perforated plate used to ensure tightness. These plainly aren't flat rings or perforated plates. And again, as you point out, washers are not fasteners. They're not used to fasten something. They might facilitate it, but they're not fasteners. Are the washers assembled into the handles prior to importation? I'm sorry? Are the washers assembled into the handles prior to importation? Well, again, there are no washers, but the end caps are assembled into the handle assemblies. Yes. The end caps are permanently assembled by means of those screws that I mentioned. I don't know. I'm having a hard time thinking that Judge Sansum didn't... I'm having a hard time deciding whether he gave proper deference to Commerce's determination that these were fasteners. Because it's, again, it's not my determination to make, it's theirs. And that's a fact question that I have to review for substantial evidence. Well, just let me make two points. One is that what he said was, look at the analysis they have. They don't... When you're trying to decide whether something is encompassed by some term, you say, well, let's define the term. There's no discussion here of the term. Then they say it's analogous to a washer. Well, anything could be... I mean, there are many things that ensure tightness like a wrench. Don't say that's a washer or relieve friction like a bearing, but that's not a washer. So he didn't give any deference. The other thing I'd like to point out, and I know you've read the briefs, is that there is no fastener exception in the language of the Finnish merchandise exclusion. If you go back to the appendix, page 25, the page that we were just looking at before, I just want to emphasize this point. Because we're talking about the fasteners, but the fastener,  containing aluminum exclusions as part and so forth. We've talked about that. Then look at the next sentence there. The scope also includes Finnish goods containing aluminum exclusions that are entered unassembled in a Finnish goods kit. Okay, now we're talking about an also, another exception. And it says that... It describes what's necessary to be... So if we agree with you on that point, so your point, just because we're running out of time, so I'm just trying to move it forward. Your point is that the exclusion to the exclusion of fasteners in the bottom part of that paragraph is limited to Finnish goods kit and not to Finnish merchandise. How does that affect the analysis here? Because what you say is, since this satisfies the requirements of the Finnish merchandise, there's no... We don't think it's a fastener. I think it's plainly something that's... But it doesn't matter whether it's a fastener. Right. And look what it says. An imported product will not be considered a Finnish goods kit and therefore excluded merely by including... In other words, they were very clear. I mean, there's a general principle that if you have language in one provision and it's not included in another provision, you wouldn't construe the first provision. If the end caps are not part of the... They're not fasteners, then what are they? They're a component of the handle assembly. For what purpose, a component? Well, I don't want to get off the... But the court did find and review evidence in this regard, right? I think what it concluded was that the... I will say what the court didn't substitute a judgment for that. What it did say was your analysis on this issue, even assuming that the fastener is relevant, is faulty. You didn't define the term fastener. You didn't analyze whether this has fastening functions. And so we can't... When the handle attaches to the door, what part of the handle actually touches the door? The end caps? Yes, the end caps are the ones that... There's no other part of the handle that touches the door? Yeah, and that's one of the functions. So the end caps hold the handle to the door? The end caps are used as... When you're attaching two things... In other words, when you're attaching whatever... You have a fastener that attaches two things. The end caps attach the handle to the door. In other words, when you have two items that are attached, right? That's why Commerce found them to be fasteners. Well, then you can say that the aluminum extruded item without the end caps is a fastener because it's attached to the door in the same way that the handle itself is attached to the door. Or it's pre-drilled with a hole in it. And there's some of these handles, as we see in some of the other cases, come with a bolt or a screw and washers. And Commerce found that those are fasteners. You mean the Meridian Products decision, you mean? Yeah. Well, that is on appeal here as well. And the court below determined that they were... And they cite Meridian Products in this case as well. They cite their decision, their finding. Yes. Well, one thing I'd say is that the fasteners issue is only relevant if you determine that the language in the finished goods kit exclusion with respect to fasteners, that that should be interpreted to mean that fasteners exception also applies in the finished merchandise exclusion. Can I take you back to a point that I think Judge Moore may have alluded to earlier, which is the exclusion for finished merchandise talks about finished windows with glass, finished doors, picture frames, sort of the ultimate product that's going to be used. So how does what's going on here qualify for that? Because this was just the handle that we're talking about, right? Yeah. Not the refrigerator and not the refrigerator door. So if we're trying to place this case mounted onto this language, this exclusion language, how does that work? Let me say two things about that. One is a window with glass serves no purpose unless it's attached to a building. In other words, you can't use a window with glass unless it's a building part, just in the same way that a handle is a refrigerator part. Well, how do we know that? It says finished windows. It says doors with glass. So at least there's a product there to which these pieces belong. And here that product would seem to be the refrigerator or the refrigerator door. Yeah. The only thing I'd say is that the Commerce Department expressly decided against that view in this. We cited in our brief a case involving Rubbermaid, where the issue with Rubbermaid was whether they, when you included, I'll just go on page, where they imported items that did not, mop appliances that didn't include the mop head. And the question was, does that mean that it's not, and originally the Commerce Department took the view that you needed the mop head. But on page 47 of our brief, if you have that here, we cite the opinion of the Commerce Department in remand in the Rubbermaid case. I have one last question that I want to ask. Why shouldn't this go back down on the subassembly point? I felt like, trust me, I totally understand your statutory interpretation argument about why the fastener exception applies only to finished goods kits and has no bearing on finished merchandise. I understand that. You've articulated it well and I've got it down. My question though is, apart from that, Commerce didn't get to decide whether this was finished merchandise or partially assembled merchandise, i.e. the subassembly point. I feel like Judge Stansu may have overstepped his bounds by making that factual determination in the first instance and preventing them, at least they felt they were prevented, from looking at that issue on remand. And maybe you have a clear idea of how it would have come out, but it's a fact question for Commerce to determine and Stansu may have overstepped his bounds by doing that in the first instance. The only thing I'll say, Judge Moore, is that I think he gave them plenty of opportunity to revisit that. He raised the issue. He said they didn't address this at all. His language seems pretty strong to me. I agree. He said they didn't include it and maybe it's no doubt apparent why they didn't include it because this is not partially assembled merchandise. But I honestly believe they could have revisited that issue, but they did not. They didn't think they could. Their opinion makes it clear they didn't think that was available to them. And his opinion is strong enough that I think their interpretation is right. They may have taken that view. But I would agree. Isn't that a fact question, whether this is partially assembled merchandise or finished merchandise? Yeah, I think it's one of those things. It's a combination of a legal issue and a factual issue. Legally you have to decide what the terms mean and then factually you have to decide given what the terms mean, is this in or without the terms? And certainly whether this would be partially assembled merchandise has a factual character. That's not your argument, is it? My argument is that what they say is two things. One, as I've said, I think you're right. It's a factual issue. Is it partially assembled merchandise? I say no, it's not partially assembled. It's fully assembled, which I think Judge Sansu agreed. The other thing I'd say, just to reiterate the point, is that even if you thought it was included within that, the last sentence of that states expressly that this does not include the non-aluminum extruded components of subassemblies. So even if that was the case, as I mentioned, these end caps account for over 25% of the value. You'd have to exclude that from coverage as not being applied. I think that if you read this carefully, you'll see they meant to include extrusions. Even when they said a subassembly was the only language that was something other than the extrusion. And there they were careful to say that if there are non-extruded components in that subassembly, they're not covered by the order. You've made your points very well. Why don't we, if everybody else is ready to, we should hear from the other side. Because I'd like to hear his response. Thank you. I didn't mean to interrupt. I'm sorry about that. I mean, it seems like opposing counsel is right. Under a statutory interpretation standpoint, whether these are fasteners is almost irrelevant. Because that fastener exception exists for finished good kits and not for finished merchandise. Do you have any response to that? And if this is finished merchandise, if that's the category it falls into, the fasteners are irrelevant. Yes, Your Honor. So to go directly to that point, their interpretation of finished merchandise versus finished goods kits, if you interpreted the scope that way, would lead to two completely inconsistent interpretations of the scope. And you would be excluding products that are facially covered by the scope. For example, in the scope where it talks about parts for final finished products, it identifies what are assemblies, window frames, door frames, solar panels, and curtain walls and furniture. That window frame, if it were, there's four extruded parts of the window frame. If it's imported as a window frame that it's assembled, it means there's fasteners in there, right? That's facially covered. Yet, if you imported that window frame unassembled with the fasteners, it would be, so if you interpret... But that's exactly the point. The scope expressly delineates between things that are assembled before importation and things that are not assembled before importation. But if this is assembled with a fastener, right? If the end cap is a fastener and the fastener is attached, under his interpretation, that's excluded. If it's assembled unattached, it's included. It's exactly the opposite of the way this reads, right? If you determine that the end cap is not a fastener, then potentially he may have a point. But if you determine that the end cap is a fastener, then whether it's attached at the time of importation or not should be irrelevant because those window frames are attached with fasteners when they came in and they're covered. I don't know. The scope language looks pretty clear to me and we do a lot of statutory interpretation up here and we don't generally read exclusions from one section into another section. And that's what you're asking me to do and you're saying that logic should cause me to do that. But I don't deviate from language that other people, you know, it'd be outside the functions of me as a judge to say, oh, well, you messed up. This exclusion ought to apply to both sections. Commerce has interpreted those provisions in order to be consistent. The mere inclusion of fasteners by themselves would not take an assembled product out. And, Your Honor, in a case that this court decided in the curtain wall unit case, the court looked and said, assembled aluminum frame units, sometimes pre-glazed with glass, otherwise meet the physical description and subject merchandise. So it was a part of the curtain wall. It's a unit where it's assembled together, which means it includes fasteners and other parts. And it was still subject merchandise. If you had a product that had only fasteners and those fasteners were attached under his interpretation, if anything's attached to it and it's assembled, it's out. So even the handles that they imported without an end cap that came in with just the screws, if they put the screws into the handle, now it's assembled and it comes in. Now it's out. Whereas facially, that's a covered product. It's an extruded aluminum part. It's a handle. That's part of the appliance door. That's facially covered merchandise. It fits the scope definition and it should be covered. So these two... All right. Well, I don't think I agree with you on this point. So why don't we get to the only point that I thought I did agree with you on, but I became very convinced by the appellee's argument. So I want you to address it head on, which is, do we need to send this back for commerce to decide in the first instance whether this is finished merchandise or partially assembled merchandise? And at first, I came in here thinking the answer to that was yes. I thought Judge Stantz, who overstepped his bounds by taking the subassembly question, which is a question of fact, away from commerce. And they clearly... I interpret their opinion on remand as believing they didn't have the authority to reach that factual question either, that it had been decided for them. So that's where I came in. And that was where I came in thinking that maybe this was a vacate and remand. But here's the thing. Now that I've seen the pictures of this thing coming in, I don't know how anybody could decide this was partially assembled merchandise. I thought the plastic end caps and all the other stuff was in a little baggie. You know, like you buy something from Ikea or Pottery Barn, right? You get pieces in bags and you got to match it up. I didn't appreciate that this thing came in completely and utterly connected and that the only thing left to do was to literally put it on the door. So how could this ever fall within the partially assembled merchandise exception given the state of the facts of this record? So it might be a fact question, but if no facts are in dispute about how these things come in, there's not really a reason to send it back. So I think... I'm trying to just lay it all out there very clearly for you. You know exactly where I am and you can address it. So I think you're right in the regard that Judge Stansu did foreclose Congress's ability of looking at partially assembled or some assembled... I don't need your verification on whether I'm right on that. What I need you to do is to address whether or not there's any reason to send it back if he made that mistake, given that I now understand the products come in fully assembled. There are no pieces in a bag. Well, Your Honor, even in the curtain wall decision, those curtain wall units are fully assembled and they have to be attached to the larger curtain wall, the skin of the entire building. If that curtain wall unit is subject and it's fully assembled when it enters, then even the handle, if you find that the end cap is not a fastener and it's assembled, this could still be subject merchandise. How is that a subassembly? The only question... I don't know if it's subject... You're not talking. You're not answering my question. You're just talking in circles, hoping I don't understand you. But I do understand you and you're completely off point. My point is you've got only one way to win with me and that is subassemblies. So tell me how this is a subassembly because I don't see any parts. I see a fully assembled product. So telling me that curtain walls are subject merchandise is not the same thing as telling me curtain rods are subassembly. This is an appliance handle that is a subassembly of the appliance door. The door doesn't function without the handle and the subassembly language expressly... By that logic, absolutely everything that ever comes in from a window, which has to be put into a building, to a tire that has to be attached to a car or bike would be a subassembly according to you. Every single thing that is not a standalone, completely self-fulfilling and self-functioning product. Is that your view of how subassembly is meant to be interpreted? I think that would be for commerce to interpret where to draw the line with respect to subassembly. But the subassembly language clearly contemplates that the extruded portions of that are still subject merchandise. So the handle here... Only if it's a subassembly. Correct. So the handle here, if it's a subassembly of the appliance door, the extruded portion of that handle would still be subject merchandise. Whether you think the end cap is a fastener or not. No, I get that. I'm just trying to figure out whether or not there is any fact question on the subassembly point because the natural extension of your argument as a matter of law, not as a matter of fact, would be that subassemblies, as that word is used in the scope, is a question of law. I'm interpreting the scope order. Not applying it. Not whether Whirlpool's handles are subassemblies, but what a subassembly is. And I'm finding it a little... I'm a little hesitant to say that a subassembly could be anything that is incorporated into a larger object ultimately. Like a window which is incorporated into a house or a tire which is incorporated into a vehicle of some sort. I'm a little nervous saying that it feels wrong to me as a matter of law that that would be the right definition of subassembly. Is there anything I can look at? Are there any other... Anything in this record at all on subassemblies or how Commerce has interpreted that term in the past? Commerce has not addressed the subassembly language in the past. But again, going back to the curtain wall decision before this court, the curtain wall unit is a subassembly of the larger curtain wall, right? It could have been found to be in for that reason. This court found that it was in as part. It was part of a curtain wall and therefore subject merchandise. What is a curtain wall? Just so I know. So a curtain wall, when you're looking at a building, the outer skin of the building where you see glass, there are aluminum extrusions that hold all of that together from the top of the building to the bottom of the building. And the skin of the building is the finished curtain wall. What this court found to be subject merchandise are the units that comes in like a jigsaw puzzle. They're pieces that are assembled to form the skin of the building. The subject merchandise. But the difference is those come in like pieces and are put together. Just like this handle is a piece that you put together to the oven door. The oven door doesn't work with that handle. You have to attach the handle to make that thing work. You have to... Are these refrigerator door handles? Refrigerator door handles. You know, you're a guy, so I'll give you a little pass on not knowing your appliance handles. But, you know, those are refrigerator door handles. But again, so as we were talking about this finished product, finished merchandise exemption, it would be an inconsistent interpretation to define one product, if it has a fastener that's attached to it, to be in because it's an assembly. And then if the same product came in without the fastener attached to it, to be subject merchandise, because it doesn't satisfy the finished goods kit exemption. That's the interpretation commerce has applied over and over again. And it's an interpretation they applied in the Meridian appliance handle kit and the trim kit. And I would also point out, going back to the fastener language, in district cargo, which was a case before this court, and the Meridian trim kits, the fasteners in those cases weren't nuts, bolts, and screws. They were brackets. They were iron locking buckles, things other than some sort of what you would think is a nut, bolt, or screw. If there are no other questions, thank you. Thank you very much. We thank both sides in the cases submitted.